Charles M. Ebie,

        Plaintiff,

    v.

City of Pataskala Division of
Police, *et al.*,

        Defendants.

Case No. 2:16-cv-283
Judge Michael H. Watson
Magistrate Judge Vascura

## OPINION AND ORDER

Plaintiff Charles M. Ebie ("Plaintiff") brings this action against Defendants

the City of Pataskala, Police Chief Bruce Brooks, Officer Trevor Colles, Officer

Robert German, and Officer Adam Beach ("Defendants") arising out of injuries

Plaintiff sustained during his arrest. Plaintiff asserts claims for violation of 42

U.S.C. § 1983 for excessive force and under Ohio law for intentional infliction of

emotional distress and assault and battery. Defendants have moved for

summary judgment. ECF No. 17. In conjunction with his brief in opposition to

summary judgment, Plaintiff submitted his sworn affidavit, which Defendants

move to strike in part for lack of personal knowledge. ECF No. 34. The motions

are fully briefed and ripe for disposition. For the following reasons, both of

Defendants' motions are **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND

### A.   Plaintiff's initial flight and Colles's pursuit

This case arises out of Plaintiff's arrest on the evening of December 12, 2015. The facts as to the first part of Plaintiff's arrest are not in dispute. At approximately 10:30 pm, Officer Trevor Colles ("Colles") observed a vehicle, later determined to be driven by Plaintiff, traveling at a speed of approximately 67 miles per hour in an area where the posted speed limit was 50 miles per hour. Colles Incident Narrative, ECF No. 17-1, PAGEID #143. Colles activated his lights and siren, but Plaintiff continued without stopping. *Id.* Over the next couple of minutes, Plaintiff twice feigned as if he were about to stop his vehicle, but as Colles approached, Plaintiff sped off again. *Id.* Colles advised dispatch that the vehicle was not stopping and that he was in pursuit. *Id.* The pursuit lasted approximately 3.8 miles and reached speeds of up to 100 miles per hour. *Id.*

### B.   Initial K-9 bite

Finally, approximately three and a half minutes after Colles first turned on his lights and siren, Plaintiff brought his vehicle to a complete stop on the right shoulder. Colles Dash Cam Video, ECF No. 29, Exhibit 1. Two other units had responded to Colles' advisement to dispatch, and Plaintiff's vehicle was boxed in by Colles's cruiser and two other cruisers driven by Officer Matthew Maddux ("Maddux") and Officer Adam Beach ("Beach"). Officer Incident Narratives, ECF

No. 17-1, PAGEID #142–46. Officers Robert German ("German") and Ted Smith ("Smith") arrived on the scene shortly thereafter. *Id.*

Immediately after stopping the vehicle, Plaintiff raised his hands above his head and then placed both his hands outside the driver's window, which was already rolled down. *Id.*; Colles Dash Cam Video, ECF No. 29, Exhibit 1. Colles, Maddux, and Beach approached Plaintiff's vehicle with weapons drawn and with Colles's K-9 partner, Officer Mutant, on a leash. *Id.* The officers ordered Plaintiff to exit the vehicle. *Id.* Plaintiff stated that he could not exit the vehicle because it was still in drive, a statement that was heard by, at minimum, Maddux. Maddux Incident Narrative, ECF No. 17-1, PAGEID #145. Plaintiff's vehicle automatically locked the doors as a safety feature when the vehicle was in drive, and thus the doors were locked and Plaintiff could not exit the vehicle. Ebie Aff. ¶ 9, ECF No. 28-1. Maddux instructed Plaintiff to put the vehicle in park, but Plaintiff feared for his safety if he were to move his hands back inside the vehicle. *Id.* ¶ 11.

While Plaintiff continued to keep his hands outside the vehicle (thereby not complying with the officers' orders to place the vehicle in park), Maddux moved to the passenger side window to place the vehicle in park. Maddux Incident Narrative, ECF No. 17-1, PAGEID #145; Maddux Dash Cam Video, ECF No. 29, Exhibit 3. Maddux was able to reach through the passenger window to place the vehicle in park and unlock the doors. While Maddux was reaching through the window, Plaintiff turned his head toward Maddux (though his hands remained raised outside the vehicle). Maddux Dash Cam Video, ECF No. 29, Exhibit 3. At

that time, Colles deployed his K-9 to bite Plaintiff, and the bite was successful on Plaintiff's head and left arm. *Id.*; Colles Incident Narrative, ECF No. 17-1, PAGEID #143.

### C. Subsequent K-9 bite, tackle, and taser shots

From here, the parties' accounts diverge. Defendants contend that as the officers opened the driver's door of the vehicle, Plaintiff "attempted to rush the officers, push his way past them, and flee from the scene," but German and Smith caught Plaintiff after he took several steps. Defs.' Mot. 5, ECF No. 17; Officer Incident Narratives, ECF No. 17-1, PAGEID #142–46. Plaintiff continued to struggle and resist the officers, refusing orders to get on the ground, which prompted Colles to deploy the K-9 for another successful bite on Plaintiff's left forearm. *Id.* Plaintiff continued to resist, including "slamm[ing] the K-9 against a police cruiser," but German and Colles were able to take Plaintiff to the ground. *Id.* Because Plaintiff continued to resist while on the ground, Beach advised Plaintiff that he would be tased if he did not comply. *Id.* Plaintiff continued to resist, and Beach deployed his taser. *Id.* Plaintiff still "did not halt his combative movements," and Beach tased him a second time. *Id.* Following the second taser shot, the officers were finally able to handcuff Plaintiff, *id.*, bringing the incident to a close.

In contrast, Plaintiff contends that once the vehicle doors were unlocked, Colles immediately "engaged Officer Mutant to attack" Plaintiff and that he was never given a chance to exit the vehicle of his own volition. Resp. 6–7, ECF No.

28; Ebie Aff. ¶ 13, ECF No. 28-1. Some combination of the K-9 and the other officers dragged Plaintiff out of the vehicle and across the street. *Id.* While the K-9 continued to attack Plaintiff, Beach tased Plaintiff while German and Colles "gang tackled" him to the ground. *Id.* While Plaintiff admits his body continued to move while on the ground, he asserts the movements were convulsions caused by the impact of the ground, the continued K-9 attack, and the taser shot. *Id.* While these involuntary convulsions continued, Plaintiff was tased again by Beach within seconds of the first taser shot. *Id.* The officers then handcuffed Plaintiff.

### D. Plaintiff's convictions

The remaining facts are undisputed. Plaintiff was treated for his dog bite and taser injuries following his arrest by paramedics at the scene and then at Licking Memorial Hospital. A toxicology screen determined that Plaintiff had been under the influence of methamphetamine at the time of his arrest. Toxicology Report, ECF No. 17-1, PAGEID #147–49. Upon his discharge from the hospital, he was taken to Licking County Jail.

On February 25, 2016, Plaintiff was indicted for the following offenses:

(1) Failure to Comply with the Order or Signal of a Police Officer under R.C. §§ 2921.331(B) and (C)(5)(a)(ii);

(2) Operating a Motor Vehicle While Under the Influence under R.C. § 4511.19(A)(1)(a);

(3) Assaulting or Harassing a Police Dog under R.C. § 2921.321(A)(1);

(4) Obstructing Official Business under R.C. § 2921.31(A); and

(5)    Aggravated Possession of Drugs (Methamphetamine) under R.C. § 2925.11(A).

Judgment of Conviction and Sentence at 2, ECF No. 17-1, PAGEID #151.

However, the State later dismissed Counts 2, 3, and 4. *Id.* Plaintiff pleaded guilty on March 24, 2017, to Failure to Comply under R.C. § 2921.331(B) and (C)(5)(a)(ii) and Aggravated Possession of Drugs under R.C. § 2925.11(A). *Id.* Plaintiff was sentenced to three years of community control sanctions.

## E.    The present action

Plaintiff commenced this action on March 31, 2016, asserting claims (1) under 42 U.S.C. § 1983 against Officers Colles, Beach, and German, as well as Police Chief Bruce Brooks, for excessive force; (2) under § 1983 against the City of Pataskala for creating a policy or practice of unlawful conduct by its police officers, or, in the alternative, a failure to adequately train its police officers; (3) for intentional infliction of emotional distress against Officers Colles, Beach, and German; and (4) for assault and battery against Officers Colles, Beach, and German. Am. Compl., ECF No. 7.

Defendants filed the present Motion for Summary Judgment on July 31, 2017. ECF No. 17. In opposition to Defendants' Motion, Plaintiff submitted his affidavit, which Defendants also move to strike in part for lack of personal knowledge. ECF No. 34.

## II.    MOTION TO STRIKE PORTIONS OF PLAINTIFF'S AFFIDAVIT

Because it bears on the record the Court will consider in determining Defendants' motion for summary judgment, the Court will turn first to Defendants' motion to strike certain paragraphs of Plaintiff's affidavit attached to Plaintiff's opposition brief.  Plaintiff's affidavit sets forth his account of his arrest and his subsequent convictions.  ECF No. 28-1.  Defendants assert that the Court must strike the following portions of Plaintiff's affidavit because they are not made on personal knowledge as required by Fed. R. Civ. P. 56(c)(4):

- ¶ 2: "To issue me a traffic/speeding violation, Officer Colles turned his car around to catch up with me."

- ¶ 3: "The Pataskala Division of Police through its Officer Robert German ("Officer German"), Officer Ted Smith ("Officer Smith"), Officer Matthew Maddux ("Officer Maddux"), and Officer A. Beach ("Officer Beach") came to assist Officer Colles in stopping and arresting me."

- ¶ 6: "…and this charge [driving under the influence of drugs or alcohol] was later dismissed when my blood/alcohol testing results were returned."

- ¶ 11: "Instead of handcuffing me, the officers continued to insist that I exit the locked car with the automatic transmission still engaged…The officers continued to insist that I exit the locked car with the automatic transmission still engaged."

- ¶ 12: "Even though they continued to yell at me to exit the locked car, the police officers clearly heard me tell them that I could not physically comply with their orders to exit the locked car while maintaining my empty hands from outside of the driver's side window of my car."

- ¶ 13: "Officer Mutant continued attacking me and dragging me out of the opened and parked car across the street. As Officer Mutant drug me out of the car and across the street, Officer Beach tased me while Officers German and Colles gang tackled me."

While Defendants are correct that Plaintiff may not aver facts outside his knowledge (such as Officer Colles's intention behind turning around his police cruiser to pursue Plaintiff, or whether the officers "clearly heard" Plaintiff's explanation for not exiting the vehicle), Plaintiff is permitted to lay out his view of the facts as he understands them from his personal experience. The Court is capable of discerning between facts that are and are not within Plaintiff's personal knowledge without formally striking the offending portions. Moreover, in most instances, Defendants do not even dispute the inferences that Plaintiff has drawn outside his personal knowledge. (*E.g.,* Defendants do not argue that Colles pursued Plaintiff for any reason other than to initiate a traffic stop, or that the other officers joined Colles for any purpose other than stopping and arresting Plaintiff.)

In other instances, the assertion of fact that Defendants oppose is really an inference they have drawn, rather than a fact averred by Plaintiff. In paragraph 11, Plaintiff merely describes the car as locked with the transmission engaged, but does not, as asserted by Defendants, state that the officers had knowledge that the car was locked. Similarly, in paragraph 6, Plaintiff merely describes the timing of the dismissal of the charge of driving under the influence and does not state a reason for the dismissal. Thus, nothing in these paragraphs is outside Plaintiff's personal knowledge.

Finally, as to paragraph 13, Defendants argue that Plaintiff "lacks personal knowledge that the K-9 dragged him out of his vehicle and across the street,

because this simply did not happen." Mot. to Strike 6, ECF No. 34. But Plaintiff was undeniably present at and centrally involved in his own arrest and may testify as to his experience of it. Defendants' disagreement with Plaintiff's account does not implicate Plaintiff's personal knowledge. Even if, as Defendants claim, dash cam video clearly demonstrates that Plaintiff's account is false,[1] this still would not render Plaintiff's testimony inadmissible for lack of personal knowledge.

In sum, the Court will disregard only those portions of Plaintiff's affidavit that fall outside his personal knowledge: the reason behind Colles's initial pursuit of Plaintiff (¶ 2); the reason that other officers joined Colles in pursuit (¶ 3); and that the officers "clearly heard" Plaintiff's explanation for not exiting the vehicle (¶ 12). The Court will now consider Defendants' Motion for Summary Judgment with these limitations in mind.

## III.    SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to

---

[1] As explained *infra*, the Court does not find that the differences in the parties' accounts are definitively resolved by the dash cam video.

that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Van Gorder v. Grand Trunk Western R.R., Inc.*, 509 F.3d 265 (6th Cir. 2007).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 587 (1986); *Pittman v. Cuyahoga Cty. Dept. of Children and Family Serv.*, 640 F.3d 716, 723 (6th Cir. 2011). The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

## IV. ANALYSIS

Defendants first assert that Plaintiff's § 1983 claims are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), and, alternatively, that the undisputed facts demonstrate that the force used by the officers was reasonable. Further, Defendants argue that the City of Pataskala cannot be liable under a policy or practice theory because Plaintiff expressly argues that the officers'

conduct violated the police department's policies. Finally, Defendants assert they are statutorily immune from Plaintiff's state law tort claims. The Court will consider each of these arguments in turn.

## A. Plaintiff's § 1983 claims are not barred by *Heck*.

### 1. The *Heck* doctrine

*Heck v. Humphrey* involved a claim by an inmate against prosecutors and a police investigator for money damages stemming from an "unlawful, unreasonable, and arbitrary investigation" (allegedly involving intentionally destroyed exculpatory evidence and an unlawful voice identification procedure) that resulted in Heck's conviction for voluntary manslaughter. 512 U.S. at 478–79. The Supreme Court determined that Heck's § 1983 claim was really an attack on the validity of his conviction, and therefore not cognizable under § 1983. *Id.* at 483. The Supreme Court went on to hold that a § 1983 suit for damages that would "necessarily imply" the invalidity of the fact of the plaintiff's conviction is not cognizable under § 1983 unless and until the plaintiff obtains favorable termination of a state, or federal habeas, challenge to his conviction or sentence. *Nelson v. Campbell*, 541 U.S. 637, 646 (2004) (citing *Heck*, 512 U.S. at 487).

The Sixth Circuit has laid out two circumstances under which *Heck* may apply to bar a § 1983 claim for excessive force. "The first is when the criminal provision makes the lack of excessive force an element of the crime." *Schreiber v. Moe,* 596 F.3d 323, 334 (6th Cir. 2010) (citing *Heck,* 512 U.S. at 486 n.6).

"The second is when excessive force is an affirmative defense to the crime . . . ." *Id.* Thus, "if a plaintiff asserts a claim that contradicts an element of an underlying criminal offense, or if that claim could have been asserted in criminal court as an affirmative defense, *Heck* applies to bar the § 1983 suit." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 609 (6th Cir. 2014).

The Sixth Circuit has also cautioned that "a court must carefully examine the facts and the temporal sequence of the underlying offense and the alleged unconstitutional conduct" to determine whether the alleged excessive force is used *after* the conclusion of the conduct underlying the § 1983 plaintiff's conviction. *Hayward*, 759 F.3d at 612. In such a case, a finding that excessive force occurred would not necessarily imply the invalidity of the underlying conviction. *Id.* at 611 (citing *Sigley v. Kuhn*, 205 F.3d 1341, 2000 WL 145187, at *1 (6th Cir. Jan. 31, 2000)).

### 2. Application of the *Heck* doctrine to the present case

Here, Defendants argue that a finding of excessive force would necessarily invalidate Plaintiff's conviction for Failure to Comply with the Order or Signal of a Police Officer under R.C. § 2921.331(B), and therefore Plaintiff's excessive force claim under § 1983 is barred by *Heck*. But lack of excessive force is not an element of § 2921.331(B), and excessive force would not be an affirmative defense to Plaintiff's § 2921.331(B) conviction.

Section 2921.331(B) provides: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible

signal from a police officer to bring the person's motor vehicle to a stop." Plaintiff pleaded guilty to an offense under this section, and also to the qualifier contained in § 2921.331(C)(5)(a)(ii), making the offense a felony of the third degree because "[t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property."

Defendants argue that Plaintiff's conduct underlying this conviction was ongoing at the time force was used on Plaintiff, because "Ebie still operated the car and had not brought it to a stop, by placing it in park and/or shutting off the engine, in compliance with officers' audible orders to do so at the time force was first employed." Reply 11, ECF No. 33. Essentially, Defendants argue that Plaintiff continued to fail to comply with Colles's initial signal to pull over for the duration of his arrest, because Plaintiff's "opportunity to flee persisted" until the use of force was deployed. *Id.*

However, the parties both agree that Plaintiff had brought the vehicle to a complete stop before any force was used. Mot. 3–4 ("Ebie eventually slowed, coming to a stop" before officers approached the vehicle), ECF No. 17; Resp. 3 ("Mr. Ebie came to a complete stop" before officers approached the vehicle), ECF No. 28. Colles's dash cam video also confirms that Plaintiff brought the vehicle to a complete stop before officers approached. ECF No. 28-1, Ex. 1. The Court is doubtful that Plaintiff could be considered to be "operating a motor vehicle" after it has been brought to complete stop. Defendants' argument that

Plaintiff continued to "operate" the vehicle so long as he did not put the car in park or shut off the engine is unsupported by the Defendants' cited cases.

In *State v. Hightower*, the defendant never voluntarily brought his vehicle to a complete stop—he crashed his vehicle and then fled on foot.  2012-Ohio-6248, ¶¶ 2, 25 (Ohio Ct. App. 6th Dist.).  Although Defendants are correct that Hightower's conviction under § 2921.331(B) was upheld even though "he was found days after the fact," nothing in the *Hightower* opinion implies that the conduct underlying the § 2921.331(B) conviction was still ongoing at the time Hightower was apprehended.

And in *State v. Goodwin*, the defendant initially brought his vehicle to a stop, but when an officer approached the vehicle and asked him to turn off the engine, the defendant "hit the gas and took off."  2008-Ohio-783, ¶ 11 (Ohio Ct. App. 9th Dist.).  While it is true that Goodwin's conviction was based on conduct that continued after Goodwin initially brought his vehicle to a stop, no such similar conduct is present here.  It is not enough, as suggested by Defendants, that "the same possibility [of continued flight] still existed."  Reply 12, ECF No. 33.  The fact that Plaintiff did not continue to attempt to flee in his vehicle after stopping makes *Goodwin* distinguishable.

The Court turns next to the statutory language itself.  The term "operate a motor vehicle" is not defined in § 2921.331.   However, in considering the definition of "operate a motor vehicle" for the purpose of § 2921.331(B), an Ohio appellate court applied the definition contained in R.C. § 4511.01(HHH), which

states: "'[o]perate means *to cause or have caused movement of a vehicle,*
streetcar, or trackless trolley.'" *State v. Odd,* 2007-Ohio-5813, ¶ 33 (Ohio Ct.
App. 5th Dist.) (emphasis added). The *Odd* court went on to note, "[t]his is in
contrast to the term 'physical control' which is defined as '* * * being in the
driver's position of the front seat of a vehicle or in the driver's position of a
streetcar or trackless trolley and having possession of the vehicle's, streetcar's,
or trackless trolley's ignition key or other ignition device.' R.C. 4511.194(A)(2)."
*Id.*

Another Ohio appellate court similarly applied the definition of "operate" in
§ 4511.01(HHH) to interpret the elements of aggravated vehicular assault under
R.C. § 2903.08(A)(1)(a). *State v. Miranda,* 2014-Ohio-5312 (Ohio Ct. App. 11th
Dist.). The *Miranda* court noted that in enacting § 4511.01(HHH), Ohio's
legislature intended to draw a distinction between causing movement of a vehicle
and merely having control of a vehicle with the potential to cause its movement.
*Id.* at ¶ 25. For the latter situation, the separate crime of Having Physical Control
of a Vehicle While Under the Influence of Alcohol was created. *Id.*; R.C.
§ 4511.194(B).

The *Miranda* court further noted that it was appropriate to apply the
definition of "operate" from § 4511.01(HHH) to contexts outside that chapter
because

> the Ohio Supreme Court has recognized that "statutes relating to the
> same matter or subject, although passed at different times and
> making no reference to each other, are *in pari materia* and should be

read together to ascertain and effectuate if possible the legislative intent," based on the assumption "that the General Assembly, in enacting a statute, is assumed to have been aware of other statutory provisions concerning the subject matter of the enactment even if they are found in separate sections of the Code."

*Id.* (quoting *Meeks v. Papadopulos,* 62 Ohio St.2d 187, 191–92, 404 N.E.2d 159 (1980)).

Following *Odd* and *Miranda*, the Court concludes that the definition of "operate" in § 4511.01(HHH) applies to Plaintiff's conviction under § 2921.331(B). As a result, Plaintiff ceased to "operate" his vehicle once he brought it to a complete stop (notwithstanding that the vehicle was still in drive and the engine was turned on), and because he made no further attempt to move the vehicle, the conduct underlying his § 2921.331(B) conviction was complete at that time. This means that excessive force could not have been an affirmative defense to Plaintiff's conviction, because the misconduct underlying the conviction had already concluded before any force was applied. Therefore, because there is "room for the facts alleged by the plaintiff and the facts essential to the judgment . . . to peacefully co-exist," Plaintiff's § 1983 claims must be allowed to go forward. *Lockett v. Suardini*, 526 F.3d 866, 873 (6th Cir. 2008) (quoting *Woods v. Lozer*, No. 3:05-1080, 2006 WL 3333521, at *10 (M.D.Tenn. Nov. 9, 2006)).

### B. Defendants are not entitled to summary judgment on the merits of the majority of Plaintiff's § 1983 claims.

Because Plaintiff's § 1983 claims are not procedurally barred by *Heck*, the Court will examine the parties' arguments as to the substantive merits of those

claims. With two narrow exceptions described *infra*, fact issues preclude
summary judgment in Defendants' favor.

> **1.    To the extent Plaintiff asserts a claim under § 1983 for
> violation of his Eighth Amendment rights, Defendants are
> entitled to summary judgment.**

In his opposition brief, Plaintiff asserts that Defendants' use of excessive
force in effecting his arrest constituted cruel and unusual punishment in violation
of his Eighth Amendment rights. Resp. 16–17, ECF No. 28. However, Plaintiff
never asserted an Eighth Amendment violation in his original or amended
complaints. Moreover, because the alleged use of excessive force occurred prior
to Plaintiff's conviction, the Eighth Amendment is simply not implicated. *Bass v.
Robinson*, 167 F.3d 1041, 1048–49 (6th Cir. 1999) (citing *Ingraham v. Wright*,
430 U.S. 651, 671 n. 40 (1977)). Instead, the appropriate constitutional lens
when analyzing claims for excessive force in the course of an arrest is the Fourth
Amendment prohibition on unreasonable searches and seizures. *Graham v.
Connor*, 490 U.S. 386, 395 (U.S. 1989).

Therefore, to the extent Plaintiff attempts to assert a claim for violation of
his Eighth Amendment rights, Defendants are entitled to summary judgment.

> **2.    The City of Pataskala is entitled to summary judgment on
> Plaintiff's policy or practice claim.**

Plaintiff asserts two alternative violations of § 1983 against the City of
Pataskala: (1) the City "maintains, actively or by omission, a policy or practice
that approves of such unlawful, malicious, and outrageous conduct [*i.e.*, the

excessive force allegedly used on Plaintiff] by its police officers ; and (2) in the alternative, the City's "failure to adequately train its employees amounts to deliberate indifference to the rights of persons with whom its officers come into contact such that said officers violated federal and state law in their police brutality against Mr. Ebie." Am. Compl. ¶¶ 130–31, ECF No. 7.

Defendants point out that in his opposition, Plaintiff repeatedly asserts that the officers' conduct in effecting his arrest violated the City of Pataskala Division of Police's policies on use of force via taser and K-9. Resp. 14–15, ECF No. 28 (citing Taser Policy and Canine (K-9) Operations Policy, ECF No. 17-1, PAGEID #165–67, 168–79). Yet, in order to succeed on a § 1983 policy or practice claim, Plaintiff must demonstrate that the alleged unconstitutional action implements or executes an official governmental policy or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978). Logically, Plaintiff cannot complain that the City maintains a policy endorsing the officers' use of excessive force while at the same time arguing that the officers' use of excessive force violated the City's policies. Therefore, Defendants are entitled to summary judgment on Plaintiff's claim against the City for maintaining a policy that approves of excessive force.

However, Defendants have not made any arguments related to the merits of Plaintiff's failure to train claim against the City. Instead, Defendants relied on their overarching argument that there was no excessive force in this case. Therefore, because the Court finds that Defendants are not entitled to summary

judgment on the excessive force claim, they are likewise not entitled to summary judgment on the failure to train claim.

### 3. Chief Brooks and Officer German are not entitled to summary judgment.

Defendants assert for the first time on reply that the "crux" of Plaintiff's excessive force claims are restricted to Officer Colles's deployment of the K-9 and Officer Beach's use of the taser, and that Plaintiff "has waived any other use of force arguments as to Defendants Chief Brooks and Officer German." Reply 6, ECF No. 33. The Court disagrees.

Although German is not alleged to have deployed the taser or the K-9, Plaintiff's Amended Complaint and Affidavit both assert that German (along with Colles) "tackled [Plaintiff] to the ground." Am. Compl. ¶¶ 91, 98, ECF No. 7; Ebie Aff. ¶ 13, ECF No. 28-1. Defendants' characterization of these allegations as outside the "crux" of Plaintiff's excessive force claims, and their assertion that Plaintiff's complaints regarding the taser and K-9 waived his claims against German, are unsupported. It is Defendants' responsibility on summary judgment to direct the Court to the parts of the record demonstrating that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law as to German's use of excessive force (or lack thereof). *Celotex*, 477 U.S. at 323. Defendants have failed to demonstrate that there is no genuine issue of material facts that German used excessive force in tackling Plaintiff to the ground. Therefore, German is not entitled to summary judgment.

As to Chief Brooks, Plaintiff's allegations are undeniably threadbare.  In his

Amended Complaint, Plaintiff states only that "[u]pon information and belief,

Chief Bruce Brooks of the City of Pataskala implicitly authorized, approved or

knowingly acquiesced in the unconstitutional conduct of the offending officers."

¶ 127, ECF No. 7.  Brooks is not mentioned at all in Plaintiff's Affidavit.  Yet,

beyond a recitation of the defendants in the action, Brooks is also not mentioned

in Defendants' opening summary judgment brief.  Again, before any burden shifts

to Plaintiff to demonstrate an issue of material fact as to Brooks's liability,

Defendants have the initial burden under *Celotex* to identify evidence and law

demonstrating Brooks's entitlement to summary judgment.  Defendants' cursory

argument, made only in their reply brief, does not satisfy that burden.

### 4. Fact issues preclude summary judgment for Officers Colles and Beach.

The bulk of the parties' briefs are spent arguing the reasonableness of the

force used by Officers Colles and Beach to effect Plaintiff's arrest.  Courts use

the framework set forth in *Graham v. Connor*, 490 U.S. 386 (1989), to evaluate

whether an officer has used excessive force in violation of the Fourth

Amendment.  This framework employs an objective-reasonableness test, asking

"whether the officers' actions are objectively reasonable in light of the facts and

circumstances confronting them, without regard to their underlying intent or

motivation." *Estate of Hill by Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017)

(quoting *Graham*, 490 U.S. at 397).

Courts must be mindful that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 409 U.S. at 397). Moreover, courts must "allow[ ] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 409 U.S. at 397.

*Graham* sets out a three-factor test to assess objective reasonableness in the typical situation of a law-enforcement officer accused in a civil suit of using excessive force: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." 409 U.S. at 396.

### a. Initial K-9 bite

K-9 force is generally considered non-deadly force and may be used when reasonably necessary to apprehend or subdue a suspect. *Robinette v. Barnes*, 854 F.2d 909, 913 (6th Cir. 1988); *Gibson v. City of Clarksville, Tenn.*, 860 F. Supp. 450, 462 (M.D. Tenn. 1993) (use of K-9 not per se unreasonable when the officers had probable cause to believe a burglary was in progress and burglars ignored a warning to surrender); *Kerrn v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:08-CV-0506, 2009 WL 365753, at *4 (M.D. Tenn. Feb. 12, 2009) (use

of K-9 reasonable when officers had probable cause to believe a burglary was in progress).

However, in many circumstances the use of a K-9 may be unreasonable. *See Rainey v. Patton*, 534 F. App'x 391, 397 (6th Cir. 2013) (it was unlawful for an officer to employ a police dog against an unarmed suspect who had been stopped due to a minor traffic offense); *Pigott v. Hornback*, No. 1:14-CV-1148, 2015 WL 9590798, at \*8 (N.D. Ohio Dec. 1, 2015), *report and recommendation adopted*, 2015 WL 9491224 (N.D. Ohio Dec. 30, 2015) (summary judgment for police officers denied on excessive force claim because the plaintiff presented evidence that the officers had already located and handcuffed the plaintiff before the K-9 was deployed); *Baxter v. Harris*, No. 3:15-CV-00019, 2015 WL 6873667, at \*4 (M.D. Tenn. Nov. 9, 2015), *aff'd*, No. 15-6412 (6th Cir. Dec. 22, 2015) (summary judgment for police officers denied when the plaintiff presented evidence that he was sitting on the ground with his hands in the air at the time the K-9 was deployed).

Turning to facts of this case through the lens of the *Graham* factors, at the time that Colles first deployed his K-9 partner, Plaintiff had just engaged the officers in a high speed chase that posed a substantial risk of serious physical harm to persons or property. And in evaluating the first *Graham* factor, the Sixth Circuit has characterized fleeing an officer as a crime of moderate severity. *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 774 (6th Cir. 2004). This factor therefore weighs in favor of Defendants.

However, Plaintiff thereafter brought the vehicle to a complete stop

voluntarily (less than four minutes after Colles first directed him to pull over) and

immediately raised his hands in the air. Thus, under the second *Graham* factor,

Defendants have not proffered evidence to support a finding that Plaintiff posed

an immediate threat to anyone's safety. The most Defendants say on this point

is that while Maddux was reaching into the vehicle, Plaintiff "made a sudden,

unidentified movement with his head toward an approaching Officer Maddux, for

which the K-9 was initially deployed." Reply 9, ECF No. 33. Having reviewed

Maddux's dash cam video which clearly depicts the head movement in question,

the Court simply does not see any threat in this movement. ECF No. 28-1,

Exhibit 3. Plaintiff's hands were still raised and outside the driver's window at the

time, and Plaintiff had not shown any previous indications of intentional violence.

*Id.*

Defendants' argument that force was necessary because the "officers had

no knowledge as to whether Ebie had a weapon within reach" is undermined by

Plaintiff's constant display of his hands for the officers, and their suggestion that

"none of the officers could understand why Ebie would not put the vehicle in

park" does not give rise to a reasonable belief that a threat to their safety was

imminent. Mot. 15, ECF No. 17. *See Correa v. Simone*, 528 F. App'x 531, 534

(6th Cir. 2013) (defendant did not pose an immediate safety threat, even though

he allegedly had a gun, because the defendant's hands were in the air and he

was not resisting at the time force was used); *Thomas v. Plummer,* 489 F. App'x

116, 126 (6th Cir. 2012) (defendants pose no immediate threat where they are not resisting and have their hands up in the air); *Landis v. Baker,* 297 F. App'x 453 (6th Cir. 2008) (a defendant poses no immediate threat where the suspect previously reacted violently but was under control at the time of the use of force).

Moreover, in Colles's incident narrative recorded on the night of the arrest, he does not mention any head movement as the inciting factor for deploying the K-9. ECF No. 17-1, PAGEID #143. All Colles had to say at the time was: "I approached the suspect's vehicle and ordered him out of the vehicle and gave a K-9 warning. The suspects [*sic*] still continued to not comply. I deployed my partner into the suspect's vehicle for a bite." *Id.* Nor do any other officers mention Plaintiff's head movement in their incident narratives. ECF No. 17-1, PAGEID #142–46. The officers' omission of any indication of a safety risk in their contemporaneous records of the arrest also weighs in favor of Plaintiff on the second *Graham* factor.

Finally, Plaintiff cannot be said to have been actively resisting arrest under the third *Graham* factor. While Plaintiff did not comply with the officers' orders to exit the vehicle, he provided an explanation that was heard by, at minimum, Maddux. Maddux Incident Narrative, ECF No. 17-1, PAGEID #145 ("I then heard Mr. Ebie tell us that he could [not] exit the car because the car was still in drive."). Moreover, failure to comply with officer orders alone does not constitute active resistance for purposes of the *Graham* analysis. *See Eldridge v. City of Warren*, 533 F. App'x 529 (6th Cir. 2013) (suspect who responded to multiple orders to

exit the vehicle by not moving and repeatedly saying, "I'm fine, thank you" was not actively resisting arrest because he displayed no "deliberate act of defiance" and "played no role in escalating the aggression"); *Goodwin v. City of Painesville*, 781 F.3d 314, 323–24 (6th Cir. 2015) (suspect who refused to comply with an order to exit his apartment by saying he did not have to come outside and withdrawing into the apartment was not actively resisting arrest).

In sum, "there is a clearly established constitutional right to be free from dog bites when one is neither resisting arrest nor attempting to flee." *Drew v. Milka*, No. 2:12–CV–10411, 2013 WL 4029047 at *5 (E.D. Mich. Aug 7, 2013), *aff'd*, 555 F. App'x 574 (6th Cir. 2014). When drawing all reasonable inferences in favor of Plaintiff, the non-moving party, the Court cannot say that the initial K-9 bite was clearly reasonable such that Colles is entitled to summary judgment on this aspect of Plaintiff's § 1983 claims.

### b. Subsequent K-9 bite, tackle, and taser shots

Although the parties' accounts of the next phase of Plaintiff's arrest conflict on several points, all parties agree that Plaintiff was bitten by the K-9 a second time, was brought to the ground by Colles and German, and was tased twice by Beach. Tasers, like K-9s, are considered non-deadly force that may be used when reasonably necessary to apprehend or subdue a suspect. The dividing line for when taser use is appropriate is whether the suspect is actively resisting arrest. *Estate of Hill*, 853 F.3d at 313; *Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015) ("When a suspect actively resists arrest, the police can use a taser . . .

to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot.").

Just as Plaintiff's initial flight in his vehicle did not mean that he necessarily continued to resist arrest once he brought the vehicle to a stop, the fact that Plaintiff was not resisting arrest at the time of the initial K-9 bite does not mean that he was not subsequently resisting arrest when the second bite, the tackle, and the two taser shots were deployed. But here, unlike the first phase of the arrest, the record is replete with factual disputes.

Defendants contend that Plaintiff attempted to rush past the officers and flee as soon as the vehicle door was opened; Plaintiff contends that he was dragged from the vehicle by some combination of the K-9 and the other officers. Defendants contend that Plaintiff continued to struggle and resist; Plaintiff argues that he made only involuntary movements caused by convulsions from the dog bite, ground impact, and taser shots. Defendants contend that Plaintiff slammed the K-9 against a police cruiser; Plaintiff contends this never happened.

Moreover, although video is available from four different dash cams during this phase of the arrest, none of the videos definitively resolve these fact issues. Plaintiff and the officers were often moving quickly; the cameras were often positioned such that much of the action happened to take place out of frame; and even when the action is in frame, the view of Plaintiff and his movements is often blocked by officers located between him and the camera. ECF No. 28-1, Exhibits 1, 3, 4; ECF No. 33, Exhibit G.

As a result, the Court is not able to determine on the record before it whether Plaintiff posed a safety risk or was actively resisting arrest at the time the second K-9 bite, tackle, and taser shots were deployed. The disputed issues of fact make it possible that a jury could reasonably find for Plaintiff on these points. Therefore, Defendants are not entitled to summary judgment on Plaintiff's § 1983 claims as to this phase of his arrest.

### C. Fact issues preclude a finding of statutory immunity for Plaintiff's state law tort claims.

Turning now to Plaintiff's state law tort claims for intentional infliction of emotional distress and assault and battery, Defendants argue they are statutorily immune from these claims under R.C. § 2744.03. This statute insulates employees of political subdivisions from damages liability for "injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function."

Plaintiff does not dispute that Colles, German, and Beach (the only defendants named in Counts 3 and 4) are employees of a political subdivision or that his claims arise out of actions in connection with a governmental or proprietary function. However, Plaintiff argues that his claims fall within the exception for immunity set forth in § 2744.03(A)(6)(b), which applies when "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

For the purposes of this exception, "[o]ne acts with a malicious purpose if one willfully and intentionally acts with a purpose to cause harm," or with "the intention or desire to harm another through conduct which is unlawful or unjustified." *Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 359 (6th Cir. 2014) (citations omitted). Whether a defendant's actions fall within § 2744.03(A)(6)(b)'s exception is typically a jury question. *Harris v. City of Circleville*, 583 F.3d 356, 370 (6th Cir. 2009) (citing *Fabrey v. McDonald Vill. Police Dep't*, 70 Ohio St. 3d 351, 356). And although the *Fabrey* court noted that the standard for demonstrating sufficient misconduct is "high," 70 Ohio St. 3d at 356, it is not insurmountable. Notably, "Ohio courts have held that summary judgment on state-law immunity is improper where fact questions remain." *Correa*, 528 F. App'x at 536 (citing *Sampson v. Cuyahoga Metro. Hous. Auth.*, 2010-Ohio-3415 (Ohio Ct. App. 10th Dist. 2010)).

Plaintiff avers facts surrounding his arrest that could give rise to a jury finding that Colles, Beach, and German intentionally used more force than was warranted to effect the arrest. As explained above, it appears to the Court that Colles' initial use of the K-9 was "unlawful or unjustified," and fact questions as to the remainder of the arrest preclude Defendants' argument that their conduct was not malicious as a matter of law. Because Defendants have not shown that they are entitled to statutory immunity on Plaintiff's state law tort claims, and because Defendants have not advanced any arguments on the merits of those

claims, Defendants are not entitled to summary judgment on Plaintiff's claims for intentional infliction of emotional distress or assault and battery.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike is **GRANTED IN PART** and **DENIED IN PART** as set forth in Section II, *supra*. Further, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims under 42 U.S.C. § 1983 that (1) are based on an alleged violation of his Eighth Amendment rights, and (2) are asserted against the City of Pataskala for maintaining a policy or practice that approves of unlawful conduct by its police officers, are **DISMISSED**. All of Plaintiff's other claims remain pending.

The Clerk is **DIRECTED** to remove ECF Nos. 17 and 34 from the Court's pending motions list.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**